IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DISH NETWORK L.L.C.,      )
            )   C.A. No. 19-1262 (RGA)
      Plaintiff,   )
            )
   v.          )
            )
SERVERLOGY CORPORATION,   )
AHMAD AL SHAHMAN and DOES 2-5,   )
individually and together d/b/a East IPTV,   )
            )
      Defendants.   )
            )

## FIRST AMENDED COMPLAINT

Plaintiff DISH Network L.L.C. ("DISH") brings this suit against Defendants Serverlogy Corporation ("Serverlogy"), Ahmad Al Shahman ("Shahman"), and Does 2-5 ("East"). Shahman and East are individually and together d/b/a East IPTV.

### Nature of the Action

1.    DISH brings this suit for direct, contributory, and vicarious copyright infringement because Shahman and East are taking broadcasts of television channels exclusively licensed to DISH and are unlawfully retransmitting these channels over the Internet throughout the United States on the East IPTV service (the "East Service") to customers who purchase East set-top boxes and subscription renewals. Shahman and East demonstrated the willfulness of their direct copyright infringement by continuing to transmit the channels exclusively licensed to DISH despite the filing of this action and despite receiving numerous demands to cease.

2.    Serverlogy's services and computer servers were used to transmit the channels exclusively licensed to DISH on the East Service. Serverlogy materially contributed to and is vicariously liable for Shahman and East's direct copyright infringement. Serverlogy received multiple notices of infringement and knew that its services and computer servers were being used

by Shahman and East to transmit channels exclusively licensed to DISH.  Serverlogy is ineligible for the Digital Millennium Copyright Act ("DMCA") safe harbor because it:  (1) failed to appoint an agent for receiving copyright infringement notices; (2) failed to respond expeditiously to remove, or disable access to material that is infringing; and (3) failed to adopt and reasonably implement a policy that provides for the termination of subscribers who are repeat infringers.  Serverlogy also permitted its services and computer servers to be used by Shahman and East to transmit the channels exclusively licensed to DISH for more than two months after Serverlogy was served with the Complaint in this action.

## Parties

3.     Plaintiff DISH Network L.L.C. is a limited liability company organized under the laws of the State of Colorado, with its principal place of business located at 9601 South Meridian Blvd., Englewood, Colorado 80112.

4.     Defendant Serverlogy Corporation is a Delaware corporation with file number 6938792.

5.     Defendant Ahmad Al Shahman is an individual doing business as East IPTV who transmits television channels to users of the East Service and sold and promoted the East Service through his eastiptv.com and eastmedia.co websites.  Shahman uses email addresses, including ahmad.shm@protonmail.com, billing@hoststore.com, ahmad@hoststore.com, info@dataname.com, w.developing@gmail.com, billing@themepure.com, payments@themepure.com, customerservice@eastmedia.co, info@eastiptv.com, and abrooks@ro.ru, the alias Mohammad Delaimi, and upon information and belief is residing in Stockholm, Sweden.  Serverlogy's counsel identified Shahman as Serverlogy's representative. (Dkt. 19.)

2

6.     Shahman paid for and controlled computer servers transmitting the channels exclusively licensed to DISH on the East Service, including computer servers provided by Servers.com, Hosting Services, and Serverlogy.  Shahman registered, renewed, and managed the eastiptv.com and eastmedia.co domains. Shahman created and managed CloudFlare accounts for the eastiptv.com and eastmedia.co domains and websites.  Shahman registered and controlled online payment accounts with Stripe for his receipt of payments from the sale of East set-top boxes and subscription renewals through the eastmedia.co website.  Shahman also created and used the East Facebook page, East Instagram account, and East YouTube channel to promote the East Service.

7.     Defendants Does 2-5 are individuals or entities doing business as East IPTV who transmit television channels to users of the East Service and sold and promoted the East Service, including through the eastitpv.com and eastmedia.co websites.  The true names and locations of Does 2-5 are currently unknown.  Upon information and belief, Does 2-5 reside in Stockholm, Sweden.  DISH believes that discovery will identify Does 2-5 and enable DISH to amend the complaint to list them by name.

## Jurisdiction and Venue

8.     DISH asserts claims under the Copyright Act, 17 U.S.C. § 101 *et seq.*  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338.

9.     Personal jurisdiction over Serverlogy is proper in this Court because Serverlogy purposefully directed its conduct towards and purposefully availed itself of the privileges of conducting business activities within Delaware.  Serverlogy is incorporated in the State of Delaware, and therefore Serverlogy is subject to this Court's personal jurisdiction.

10.     Personal jurisdiction is proper against Shahman and East under Rule 4(k)(2) of the Federal Rules of Civil Procedure.  Shahman and East sell the East Service and transmit channels exclusively licensed to DISH to users of the East Service throughout the United States ("Service Users") in violation of the Copyright Act.  This Court's exercise of jurisdiction over Shahman and East is consistent with the Constitution and laws of the United States, DISH's claims arise under federal law, and Shahman and East are not subject to the jurisdiction of the courts of general jurisdiction of any state.

11.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(1) because Serverlogy resides in this judicial district, under § 1391(b)(2) because a substantial part of the events causing DISH's claims occurred in this district, and under § 1391(b)(3) because Defendants are subject to personal jurisdiction in this district.  Venue is also proper in this Court under 28 U.S.C. § 1400(a) because the case involves violations of the Copyright Act.

### DISH's Copyrights

12.     DISH is the fourth largest pay-television provider in the United States providing copyrighted programming to millions of subscribers nationwide with satellite delivery under the "DISH" brand and through over-the-top ("OTT") services under the "Sling" brand whereby programming is delivered using a public Internet infrastructure.  Through its satellite and Sling services, DISH is one of the largest providers of international television channels in the United States offering more than 400 channels in 27 different languages.

13.     DISH contracts for and licenses rights for the international channels distributed on its platform from channel owners and their agents, including Al Jazeera Media Network; MBC FZ LLC; International Media Distribution (Luxembourg) S.A.R.L.; World Span Media Consulting, Inc., and Dream Media (collectively, the "Networks").

4

14.     The Networks' Arabic-language channels include Al Arabiya; Al Hayah 1; Al Jazeera Arabic News; Al Jazeera Mubasher; ART Cima; CBC; CBC Drama; Dream 2; Future TV; Hekayat; LBC; LDC; MBC1; MBC Drama; MBC Kids (a/k/a MBC3); MBC Masr; and Melody Classic (collectively, the "Protected Channels").  The Networks acquire copyrights in the works that air on their respective channels, including by producing the works and by assignment.

15.     DISH entered into signed, written licensing agreements with the Networks granting DISH the exclusive right to distribute and publicly perform the Protected Channels and works that air on the Protected Channels in the United States by means including satellite, OTT, Internet protocol television ("IPTV"), and Internet.  DISH's exclusive rights were in effect at all relevant times and are currently in effect.  Twenty-one or more works that aired on the Protected Channels and for which DISH holds exclusive distribution and public performance rights are registered with the United States Copyright Office.  (*See* Exhibit 1.)  A vast number of additional, unregistered copyrighted works in which DISH holds exclusive distribution and public performance rights also aired on the Protected Channels.  (*See* Exhibit 2.)

16.     Defendants are not authorized by DISH to transmit, distribute, or publicly perform the Protected Channels or works that air on those channels in the United States, and DISH has received no compensation from Defendants to do so.

<u>**Shahman and East's Wrongful Conduct**</u>

17.     Shahman and East distribute, sell, and promote the East Service to Service Users.

18.     Shahman and East promoted the East Service on the eastiptv.com website, instructing consumers to "BUY NOW & GET ALL CHANNELS FOR ONLY $199.99 NO CONTRACT REQUIRED" and included marks of Protected Channels.



19.     Shahman and East also promoted the East Service on eastiptv.com claiming they "OFFER THE BEST AND FASTEST IP TV BOX!" allowing users to "Experience the entire spectrum of Arabic IPTV channels programming as its happening with up-to-date news, popular shows, sports," including "Premium Broadcasting," and channels that are "Maintained and Updated."



20.     Shahman and East maintain and update the Protected Channels because DISH and Networks send notices of infringement to content delivery networks ("CDNs") associated with the East Service requesting that they remove the Protected Channels.   Hosting Services and Servers.com are CDNs that forwarded the notices to Shahman and then terminated the computer servers transmitting the Protected Channels on or about March 17, 2018 and June 8, 2018, respectively,   However, Shahman and East intentionally interfered with the takedown efforts by transmitting the Protected Channels from different CDNs and locations, including Serverlogy. Upon information and belief, Shahman ordered the incorporation of Serverlogy, which occurred on June 19, 2018, so he could direct Serverlogy to disregard DISH and Network's notices and Shahman and East could continue transmitting the Protected Channels on the East Service without additional interruptions.

21.     Shahman and East use the East Service to transmit the Protected Channels over the Internet to Service Users soon after the original authorized transmission.  Shahman and East capture live broadcast signals of the Protected Channels, transcode these signals into a format useful for streaming over the Internet, transfer the transcoded content to one or more servers provided, controlled, and maintained by Shahman and East, and then transmit the Protected Channels to Service Users through OTT delivery.

22.     Shahman and East communicated with Service Users through posts on the Facebook page located at https://www.facebook.com/profile.php?id=100011374886935.  For example, the Facebook posts indicate they "prepared" and "added" the MBC Iraq channel to the East Service in response to a request from a Service User living in Boston, Massachusetts.



23.     Any member of the public with Internet access, including Service Users, can receive the Protected Channels from Shahman and East by simply purchasing an East set-top box; powering on the device; and selecting the Protected Channels.

24.     Eastiptv.com included a "BUY NOW" link that directed consumers to a shopping cart at the eastmedia.co website, where Shahman and East sold the East set-top box for $199.99, with a one year subscription for accessing the channels.  Service Users who want to continue to receive the channels after the initial subscription period must purchase a one year subscription renewal from Shahman and East for $99.

25.     Shahman and East have actual knowledge that the transmission of the Protected Channels on the East Service infringes DISH's copyrights.  DISH and Networks sent at least 36 notices of infringement between January 18, 2017 and the filing of this First Amended Complaint, demanding that East cease transmitting the Protected Channels identified in the notices, or otherwise cease distributing, selling, and promoting the East Service in the United States.  DISH and Networks sent at least 13 additional notices to CDNs associated with the East Service requesting that they remove the Protected Channels, and at least some of these notices were forwarded to Shahman and East.

### Serverlogy's Wrongful Conduct

26.     Serverlogy is a CDN that uses its website http://serverlogy.com ("Serverlogy.com") to market and sell data and website hosting solutions, including dedicated and shared cloud hosting and "managed server hosting to make sure [its subscriber's] servers are never down!"

27.     Through the provision of these services, Serverlogy has knowingly contributed to, and reaped profits from, copyright infringement committed by Shahman and East, causing great harm to DISH.  Serverlogy's contribution to Shahman and East's infringement is both willful and extensive, and renders Serverlogy equally liable.

28.     From September 11, 2018 through at least September 19, 2019, Serverlogy deliberately refused to take reasonable measures to stop Shahman and East from using its services and servers to infringe on DISH's copyrights —even after Serverlogy became aware of Shahman and East's specific and repeated acts of infringement.  DISH and Networks sent ten notices of infringement to Serverlogy advising Serverlogy of Shahman and East's blatant and systematic use of Serverlogy's services and servers to transmit, distribute, and publicly perform the Protected Channels to Service Users.  Rather than work with DISH to curb this infringement, Serverlogy

willfully blinded itself to Shahman and East's repeat infringement, failing to terminate their account or take any action to remove or disable the infringing content for more than two months after Serverlogy was served with the Complaint in this action.

29.     Rather than stop Shahman and East's unlawful activity, Serverlogy prioritized its own profits over its legal obligations.

30.     Congress created a safe harbor in the DMCA that limits the liability of service providers for copyright infringement when their involvement is limited to, among other things, "transmitting, routing, or providing connections for, material through a system or network controlled or operated by or for the service provider."  17 U.S.C. § 512(a).  To benefit from the DMCA safe harbor, along with meeting other preconditions, a service provider must: (1) have "designated an agent to receive notifications of claimed infringement . . . by making available through its service, including on its website in a location accessible to the public, and by providing to the Copyright Office . . . the name, address, phone number, and electronic mail address of the agent"; (2) "upon notification of a claimed infringement . . . responds expeditiously to remove, or disable access to, the material that is claimed to be infringing"; and (3) demonstrate that it "has adopted and reasonably implemented . . . a policy that provides for the termination in appropriate circumstances of subscribers . . . who are repeat infringers."  17 U.S.C. §§ 512(c)(1)(C); (c)(2); (i)(1)(A).  Serverlogy is ineligible for the DMCA safe harbor for failure to comply with each of these requirements.

31.     Serverlogy has not designated an agent to receive notifications of claimed infringement by either making contact information for the agent available on Serverlogy.com or by providing the contact information for the agent to the Copyright Office.

32.     The same Serverlogy servers and URLs were used by Shahman and East for infringement between September 11, 2018 and September 19, 2019, despite ten notices of infringement identifying the IP addresses of the servers and the URLs of the Protected Channels, establishing that Serverlogy:  (1) failed to respond expeditiously to remove, or disable access to material that is infringing; and (2) failed to adopt and reasonably implement a policy that provides for the termination of subscribers who are repeat infringers.

33.     Serverlogy had the right and ability to stop or limit the copyright infringement because it could have removed or blocked access to the Protected Channels being transmitted from its servers and eventually terminated Shahman and East's account more than two months after Serverlogy was served with the Complaint in this action.  Serverlogy turned a blind eye to Shahman and East's infringement and operated its service as an attractive tool, and as a safe haven, for Shahman and East's infringement.

34.     Serverlogy derived an obvious and direct financial benefit from Shahman and East's infringement.  Serverlogy's service and servers were used to distribute or publicly perform thousands of copyrighted works that aired on the Protected Channels to an unknown number of Service Users, serving as a draw for Serverlogy to attract, retain, and charge higher fees to its subscribers.  By failing to terminate the account of Shahman and East, Serverlogy obtained a direct financial benefit from Shahman and East's infringing activity in the form of illicit revenue that it would not have received had it terminated Shahman and East's account.  Serverlogy decided not to terminate Shahman and East's account or remove or disable the Protected Channels because it wanted to maintain the revenue that would come from the account.

35.     The infringing activity of Shahman and East that is the subject of DISH's secondary infringement claims against Serverlogy occurred after Serverlogy received notice of Shahman and

East's infringement.  Specifically, DISH seeks relief against Serverlogy for claims of infringement that accrued from September 11, 2018 through at least September 19, 2019.

## CLAIMS FOR RELIEF

### Count I

### Direct Copyright Infringement Under 17 U.S.C. § 501

### Against Shahman and East

36.     DISH repeats and realleges the allegations in paragraphs 1-25.

37.     DISH is a copyright owner under 17 U.S.C. § 106 because DISH holds the exclusive rights to distribute and publicly perform in the United States, by means including satellite, OTT, IPTV, and Internet, the programs that make up the Protected Channels.

38.     The programs that make up the Protected Channels are original audiovisual works fixed in a tangible medium of expression, and are therefore copyrightable subject matter.  DISH's copyrights in programs that aired on the Protected Channels arise under laws of nations other than the United States that are parties to copyright treaties with the United States, including the United Arab Emirates, Qatar, Egypt, and Lebanon, where the programs were authored and first published. Under 17 U.S.C. §§ 101, 411, the programs that make up the Protected Channels are non-United States works and, therefore, registration with the United States Copyright Office is not a prerequisite to filing a copyright infringement action with respect to these works.

39.     Shahman and East directly infringe DISH's copyrights in violation of 17 U.S.C. § 501 by distributing and publicly performing programs that make up the Protected Channels to Service Users, including the works identified in Exhibits 1-2.  The copyrighted programs were transmitted from computer servers controlled by Shahman and East to Service Users who accessed the programs using the East Service.

12

40.     DISH has not authorized Shahman or East to distribute or publicly perform the programs that make up the Protected Channels in any manner.

41.     The infringement of DISH's rights in each program constitutes a separate and distinct act of copyright infringement.

42.     Shahman and East's actions are willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

43.     Unless enjoined by the Court, Shahman and East will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count II

**Materially Contributing to Copyright Infringement Under 17 U.S.C. § 501**

**Against Serverlogy**

44.     DISH repeats and realleges the allegations in paragraphs 1-35 and 37-43.

45.     DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by Shahman and East's unauthorized transmission of these programs to Service Users who access the programs using the East Service.   Shahman and East used services and computer servers provided by Serverlogy to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels.

46.     Serverlogy materially contributes to Shahman and East's direct infringement of DISH's exclusive distribution and public performance rights.   Through infringement notices, Serverlogy had actual knowledge that the transmission of the Protected Channels and the programs that make up the Protected Channels to Service Users infringes DISH's exclusive distribution and

public performance rights, and that Serverlogy's services and servers were being used for such copyright infringement on a massive scale. Serverlogy also had actual knowledge that its subscribers, Shahman and East, engaged in such repeated and willful copyright infringement. Serverlogy facilitated, encouraged, and materially contributed to Shahman and East's infringement by continuing to provide its services, servers, and the facilities necessary for Shahman and East to commit repeated infringement.

47.     Serverlogy had the means to withhold its assistance to Shahman and East upon learning of the URLs and IP addresses of the servers providing access to the Protected Channels, including removing or disabling the Protected Channels or terminating Shahman and East's account, but Serverlogy failed to do so for more than a year, including for more than two months after Serverlogy was served with the Complaint in this action. Serverlogy could have timely taken these simple measures to prevent further infringement of DISH's exclusive rights to distribute and publicly perform the programs that make up the Protected Channels.

48.     By purposely ignoring and turning a blind eye to Shahman and East's willful and repeated infringement, Serverlogy knowingly caused and materially contributed to the unauthorized distribution and public performance of the Protected Channels and programs that make up the Protected Channels, in violation of DISH's exclusive rights under the copyright laws of the United States.

49.     Serverlogy's actions were willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

50.     Unless enjoined by the Court, Serverlogy will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

## Count III

### Vicarious Copyright Infringement Under 17 U.S.C. § 501

### Against Serverlogy

51.     DISH repeats and realleges the allegations in paragraphs 1-35 and 37-43.

52.     DISH's exclusive rights to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels are directly infringed by Shahman and East's unauthorized transmission of these programs to Service Users who access the programs using the East Service.  Shahman and East used services and computer servers provided by Serverlogy to distribute and publicly perform the Protected Channels and programs that make up the Protected Channels.

53.     Serverlogy is liable as a vicarious copyright infringer for Shahman and East's direct infringement of DISH's exclusive distribution and public performance rights.

54.     Serverlogy had the legal right and the actual ability to supervise and control the infringing activities of Shahman and East that occurred through the use of Serverlogy's service and servers.  Serverlogy failed to take any action to stop the infringement of DISH's exclusive rights in the programs that make up the Protected Channels for more than a year, including for more than two months after Serverlogy was served with the Complaint in this action.

55.     At all relevant times, Serverlogy had a financial interest in, and derived direct financial benefit from, Shahman and East's infringing use of Serverlogy's service and servers.  Serverlogy's service and servers were used to distribute or publicly perform thousands of copyrighted works that aired on the Protected Channels to an unknown number of Service Users, serving as a draw for Serverlogy to attract, retain, and charge higher fees to its subscribers.  By

15

failing to timely terminate the account of Shahman and East and remove or disable the Protected Channels, Serverlogy profited from illicit revenue that it would not have received.

56.     Serverlogy's actions were willful, malicious, intentional, purposeful, and in disregard of and with indifference to the rights of DISH.

57.     Unless enjoined by the Court, Serverlogy will continue to engage in acts causing substantial and irreparable injury to DISH that includes damage to its reputation, loss of goodwill, and lost sales, for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, DISH prays for judgment against Defendants as follows:

A.     For a grant of permanent injunctive relief under 17 U.S.C. § 502 restraining and enjoining Defendants, and any of their agents, servants, employees, attorneys, or other persons acting in active concert or participation with any of the foregoing that receives actual notice of the order (including, without limitation, distributors and retailers of the East Service), from:

1.     transmitting, streaming, distributing, or publicly performing in the United States, with any East set-top box, subscription renewal, or any other device, application, service, or process, any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

2.     distributing, selling, providing, or promoting any product or service in the United States, including any East set-top box or subscription renewal, that comprises the whole or part of a network or service for the distribution or public performance of any of the Protected Channels or any of the programming that comprises any of the Protected Channels;

3.　　advertising, displaying, or marketing any East set-top box, subscription renewal, or service in connection with the Protected Channels or the programming that comprises the Protected Channels; and

4.　　inducing or contributing to another's conduct that falls within 1, 2, or 3 above.

B.　　For the twenty-one or more registered works, statutory damages as awarded by the Court up to $150,000 per registered work infringed under 17 U.S.C. § 504(c), or the Defendants' profits attributable to the infringement of those registered works under 17 U.S.C. § 504(b).

C.　　For unregistered works, an award of Defendants' profits attributable to the infringement of each unregistered work under 17 U.S.C. § 504(b).

D.　　For DISH's attorneys' fees and costs under 17 U.S.C. § 505.

E.　　For impoundment and disposition of all infringing articles under 17 U.S.C. § 503.

F.　　For an order permanently transferring each domain name that Shahman and East used in connection with the infringement to DISH.

G.　　For pre- and post-judgment interest on all monetary relief, from the earliest date permitted by law at the maximum rate permitted by law.

H.　　For such additional relief as the Court deems just and equitable.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Rodger D. Smith II*

OF COUNSEL:

Stephen M. Ferguson
HAGAN NOLL & BOYLE, LLC
Two Memorial City Plaza
820 Gessner, Suite 940
Houston, TX 77024
(713) 343-0478 – Tel

December 13, 2019

Rodger D. Smith II (#3778)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
rsmith@mnat.com

*Attorneys for Plaintiff DISH Network L.L.C.*

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

DISH NETWORK L.L.C.,                      )
                                          )        Civil Action No. 19-1262 (RGA)
                  Plaintiff,              )
                                          )
         v.                               )
                                          )
SERVERLOGY CORPORATION,                   )
AHMAD AL SHAHMAN and DOES 2-5,            )
individually and together d/b/a East IPTV, )
                                          )
                  Defendants.             )
                                          )

## EXHIBIT NO. 1 TO FIRST AMENDED COMPLAINT

Copyrighted works that aired on the Protected Channels and are registered with the United
States Copyright Office:

| Title of Work | Date of First Publication | Protected Channel | Registration Number | Effective Date of Registration |
|---|---|---|---|---|
| News Bulletin, 12/6/2017 | December 6, 2017 | Al Jazeera Arabic News | PA0002107543 | January 24, 2018 |
| News Bulletin, 2/26/2019 | February 26, 2019 | Al Jazeera Arabic News | PA0002188010 | May 29, 2019 |
| Sports News, 2/26/2019 | February 26, 2019 | Al Jazeera Arabic News | PA0002188012 | May 29, 2019 |
| The Opposite Direction, 2/26/2019 | February 26, 2019 | Al Jazeera Arabic News | PA0002188008 | May 29, 2019 |
| Without Bounds, 2/27/2019 | February 27, 2019 | Al Jazeera Arabic News | PA0002188006 | May 29, 2019 |
| Hashtag, 12/6/2017 | December 6, 2017 | Al Jazeera Mubasher | PA0002107544 | January 24, 2018 |
| Hit Al Mawsem, Season 2, Ep. #2 | September 8, 2018 | MBC1 | PA0002154603 | November 6, 2018 |
| Sada Al Mala'eb (2017), Ep. #113 | December 4, 2017 | MBC1 | PA0002107550 | January 25, 2018 |

| Sada Al Mala'eb (2017), Ep. #115 | December 4, 2017 | MBC1 | PA0002107551 | January 25, 2018 |
|---|---|---|---|---|
| Sada Al Mala'eb (2019), Ep. #430 | February 26, 2019 | MBC1 | PA0002187998 | May 29, 2019 |
| Sada Al Mala'eb (2019), Ep. #454 | March 22, 2019 | MBC1 | PA0002187986 | May 29, 2019 |
| Takhareef, Ep. #1 | September 3, 2018 | MBC1 | PA0002154573 | November 6, 2018 |
| Ma Lam Tara (3), Ep. # 2 | February 28, 2019 | MBC1 | PA0002187994 | May 29, 2019 |
| Bab Al Hara, (Drama Edit V2) (4), Ep. #18 | December 6, 2017 | MBC Drama | PA0002107541 | January 25, 2018 |
| Al Chef Hassan (2017), Ep. #317 | December 6, 2017 | MBC Masr | PA0002107548 | January 25, 2018 |
| Al Chef Hassan (2017), Ep. #319 | December 6, 2017 | MBC Masr | PA0002107549 | January 26, 2018 |
| Al Hekaya Ma' Amr Adib (2019), Ep. #36 | March 4, 2019 | MBC Masr | PA0002187989 | May 29, 2019 |
| Tasali Ahla Alam (2017), Ep. #316 | December 6, 2017 | MBC Kids / MBC3 | PA0002107546 | January 26, 2018 |
| Tasali Ahla Alam (2019), Ep. #41 | February 26, 2019 | MBC Kids / MBC3 | PA0002187988 | May 29, 2019 |
| Tasali Ahla Alam (2019), Ep. #60 | March 25, 2019 | MBC Kids / MBC3 | PA0002188002 | May 29, 2019 |
| Yahdoth fe Masr (2019), Ep. #36 | March 21, 2019 | MBC Masr | PA0002187990 | May 29, 2019 |

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| DISH NETWORK L.L.C., | ) | |
| | ) | Civil Action No. 19-1262 (RGA) |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| SERVERLOGY CORPORATION, | ) | |
| AHMAD AL SHAHMAN and DOES 2-5, | ) | |
| individually and together d/b/a East IPTV, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**EXHIBIT NO. 2 TO FIRST AMENDED COMPLAINT**

Examples of copyrighted works that aired on the Protected Channels and do not have registrations pending with the United States Copyright Office:

| Title of Work[1] | Protected Channel |
|---|---|
| Last Hour | Al Arabiya |
| Panorama | Al Arabiya |
| Special Interviews | Al Arabiya |
| Sports News | Al Arabiya |
| El Hayah el Yom | Al Hayah 1 |
| Behind The News Program | Al Jazeera Arabic News |
| Today's Harvest | Al Jazeera Arabic News |
| Market Tour | Al Jazeera Mubasher |
| Ask | Al Jazeera Mubasher |
| Film Clip | ART Cima |
| Hona Al Asema, all episodes from June 20, 2018 to present | CBC |
| Rahim, all episodes from June 20, 2018 to present | CBC Drama |
| Al'easherh Mesa'a | Dream 2 |
| Interviews | Future TV |

---

[1] Includes all episodes of the identified series unless otherwise noted.

| | |
|---|---|
| Grimat Shaghaf | Hekayat |
| Arabwood | LBC |
| Lahon wou Bass | LDC |
| Al Thaminah | MBC1 |
| Bel Aarda | MBC1 |
| Bel Mokhtasar | MBC1 |
| Essal Al Arab | MBC1 |
| Haflat Majed Al Mohandes | MBC1 |
| Hamsa | MBC1 |
| Ma'aly Al Mowaten | MBC1 |
| Sabah Al Khair Ya Arab | MBC1 |
| Saherat Al Janoub | MBC1 |
| Top Chef | MBC1 |
| Abu Al Banat | MBC Drama |
| Banat Al Shams | MBC Drama |
| Saherat Al Janoub | MBC Drama |
| I-Tech | MBC Kids / MBC3 |
| Sawa Fe | MBC Kids / MBC3 |
| Telescope | MBC Kids / MBC3 |
| Asa'd Allahu Masa' akom | MBC Masr |
| Saherat Al Janoub | MBC Masr |
| El Haram | Melody Classic |